## No. 9537.

### MRS. FRANCES C. MOORE VS. JUNIUS HART.

This case involves questions of fact alone, and the conclusions of the judge *a quo* are approved.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Thos. J. Semmes, W. B. Lancaster* and *J. J. O'Connor* for Plaintiff and Appellant.

*C. H. Luzenberg* and *H. E. Upton* for Defendant and Appellee.

The opinion of the Court was delivered by

FENNER, J. Plaintiff in her petition alleges that her son, Charles Moore, died in this city on January 15, 1884, and that his succession was opened in the Civil District Court of this parish on January 17, 1884. That her said son, on the day of his death, had in his possession $6000 belonging to her, and which he held as her depositary; that at the time of his death, said sum of $6000 was in the iron safe of her said son, set apart as a package, or in packages of National Bank notes or United States Treasury notes, and marked with her name as the owner thereof; that said safe was in the office of her said son, which office was in the premises occupied by defendant, Junius Hart, on Canal near Rampart street in this city. That immediately after the death of her said son, and on the day that he died, the defendant, Junius Hart, applied to her for the keys of said iron safe, where said money belonging to her was deposited, stating it was necessary to obtain the title papers of the grave lot which her deceased son owned, in order that preparations for the burial of his remains might be made. That, induced by said representations, she delivered to said Hart the keys of said iron safe; two days afterwards said Hart returned the keys, stating that he had taken possession of said packages of said money for her account, inasmuch as they were her property, And further avers in her petition that said Hart was aware of the fact because of her son's occupancy of the office aforesaid on the premises of said Hart, and from intimacy with her son, had obtained from him in his lifetime information as to the ownership of said money thus specially deposited and set apart as the property of plaintiff. She further alleges that said Hart refuses to deliver said sum of money to her or recognize her ownership therein, and prays that said Hart be condemned to deliver to her said packages of money, or in lieu thereof, the sum of $6000, with interest from January 15, 1884, and costs.

Such are the material averments contained in plaintiff's petition.

The answer of defendant is a general denial.

The law establishes, as applicable to human relations as well as in physics, a certain passive principle of *vis inertiæ*, under which the existing *status* is permitted to persist unless overcome by some contrary force of superior power. The judiciary, when called upon to apply such contrary force, refuses to do so unless the grounds of law and fact upon which the interference is claimed be established with such reasonable clearness and certainty as to satisfy the judicial mind of the necessity of interfering.

This doctrine has been crystallized in the hackneyed and somewhat exaggerated aphorism that " the burden of proof is upon the plaintiff, and that to recover he must make his claim certain; to make it only probable is not enough."

It is obvious that where, as in this case, the plaintiff's claim rests upon a charge of crime against the defendant, the principle above stated is reinforced by the powerful presumption of innocence and thus demands the strictest application. To establish her claim, it was absolutely necessary for plaintiff to prove two things, viz:

1. That, at her son's death, there was in the safe referred to a sum of money belonging to her and not to her son.

2. That defendant unlawfully took possession of said money and refused to deliver it to her.

If the money, whatever its amount, remained the property of her son, and if he was a mere debtor of the mother, in whatever amount, plaintiff has no case. For the evidence is uncontradicted that the son's succession was regularly opened and administered; that an inventory was duly taken; that the heirs, including plaintiff, concurred in a notarial act of sale by which they sold to Junius Hart, with full subrogation, all their rights as heirs in and to said succession, he assuming all its liabilities; that before signing the act, plaintiff was distinctly asked whether she had any claim against the succession, had matters fully explained to her, was warned not to sign if she had any such claims; and signed the acts.

Thus, under the facts of the case, as well as under the pleadings, she has no standing in court as heir or as creditor of Charles Moore, but must stand or fall by her proof of ownership of the money claimed.

Now it appears that Charles Moore was a broker in public school teachers' certificates, and that several years before his death he had received $1700 or $1800 of his mother's money, which he employed in

his business and had never repaid.   Of course, he was a mere debtor of his mother for the amount.

What the terms of the loan were does not appear, but it is possible he considered that he would account to her for the profits made on it,. and that, in his lucrative business, the sum might have swelled to $6000 at the time of his death.

It may be that he did tell his mother, as she swears, before his death,. that he had $6000 belonging to her, and even offered to turn it over to her, and advised her to take it ; but, if this be so and had she accepted this offer, the likelihood is that he would have handed her $6000· of the large amount of school certificates which were found in the safe at his death.

Upon this slender foundation, with feminine inexactness of  compre-- hension in business affairs and haste to jump at conclusions, this good lady has, no doubt, honestly built up her belief that her son had told her that he had in the safe six thousand dollars in bank notes put up· in a package and marked with her name, and thus set aside as her property.

If he had told her so, the insufficiency of such a statement as a basis· for such a claim against the defendant, would be apparent.   But the reading of her own testimony does not establish that he ever made· such a statement in the distinct terms above mentioned.

None of the surrounding circumstances support the theory that her· son had any such sum of money in the safe.   He kept books in his. business and they exhibited no indication of it; and it is shown that he was, at the time, in need of money for his business.

It is needless to say that the allegation made in the petition that defendant had acknowledged having found and taken the package of money, is entirely unsupported by the evidence.

We conclude, therefore, that there is no proof that Charles Moore· left in his safe, at his death, $6000 or any sum of money placed in a package marked with her name and set apart as her property; and while he may have told her that he had $6000 for her in his safe, her own testimony does not convince us that he made such statements with regard to its setting apart as would change the relation of debtor· and creditor and transfer to her the property in such a sum.   Her ori-- ginal statement of what he said conveyed no such idea and it was only on cross-examination that she strengthened and added to her first account.

This leaves no foundation for plaintiff's case and dispenses us from the necessity of discussing the singular conflict of evidence touching·

defendant's obtention of the keys. Even if defendant did get the keys and has falsely denied the fact, while this might excite a suspicion of *some* sinister motive and conduct, it would, by no means, establish that he took $6000 belonging to plaintiff, when there is no proof that the safe contained anything belonging to her.

But the judge *a quo,* who heard and saw the witnesses, evidently gave his belief to those of defendant, and we see no reason to differ from his conclusion.

Judgment affirmed.